United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES A. BLANCO,<br><br>        Plaintiff,<br>   v.<br><br>AMERICAN ACADEMY OF FORENSIC SCIENCES,<br><br>        Defendant.<br>                                     / | No. C 09-02780 SI<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

Plaintiff's motion for a preliminary injunction was heard on January 29, 2010. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court hereby DENIES plaintiff's motion.

**BACKGROUND**

The following undisputed facts are drawn from plaintiff's First Amended Complaint (FAC) and defendant's Answer. Docket Nos. 3, 5. Plaintiff James Blanco has been a forensic document examiner since 1989, and a member of defendant American Academy of Forensic Sciences (AAFS) "at all times pertinent." FAC ¶¶ 6-7. Defendant is a non-profit professional organization with approximately 6,000 members in over 60 countries. FAC ¶ 8.

David Moore (hereafter complainant Moore), a member of AAFS, filed a formal written complaint against plaintiff with defendant on January 5, 2006. FAC ¶ 10. The internal complaint asserted that plaintiff had violated two sections of AAFS's Code of Ethics and Conduct, based on plaintiff's participation as an expert witness prior to a trial in Marin County. FAC ¶ 11. The AAFS Ethics Committee, chaired by Retired Judge Haskell Pitluck, conducted an initial investigation. FAC

1  ¶ 16. Plaintiff was informed about Moore's complaint by a letter dated June 6, 2006. FAC ¶ 17. The
2  letter stated that the "crux of the complaint was an opinion Blanco gave in an examination regarding the
3  determination of line sequencing." FAC ¶ 16. The letter also informed Blanco that "the Ethics
4  Committee's investigation of complainant Moore's charges to that point revealed there was no proof
5  in the professional literature or any basis for Blanco's determination of the sequence of writing ink and
6  inkjet ink based upon the examinations conducted by plaintiff." *Id*. Plaintiff responded with a letter
7  dated July 10, 2006 in which he denied the charges and argued that he in fact had a sufficient scientific
8  basis for his opinion. FAC ¶ 17. Chair Pitluck responded on November 16, 2006 with a request that
9  plaintiff produce "literature in [his] field" to support the conclusion at issue, stating that AAFS was
10 "only concerned that [plaintiff's] opinions are based upon scientific principles in accordance with The
11 Code of Ethics and Conduct." FAC ¶ 18. Plaintiff's counsel then provided a list of professional
12 literature citations to Chair Pitluck on November 8, 2007. FAC ¶ 19.

13 On February 19, 2008, Chair Pitluck conducted a hearing on the charges against Blanco with a
14 panel of four members of defendant AAFS. Plaintiff's Motion, Docket No. 19 at 3. Plaintiff was
15 informed by Chair Pitluck on June 13, 2008 that the AAFS Ethics Committee had found him in violation
16 of the AAFS Code of Ethics and Conduct. FAC ¶ 24. That letter did not indicate what steps would be
17 taken by defendant to sanction plaintiff. *Id.* On the same date, an Ethics Committee report
18 recommending the expulsion of plaintiff was sent to the Board of Directors. FAC ¶ 25. Plaintiff notified
19 defendant by letter, dated June 29, 2008, that he disputed the findings of the Ethics Committee. FAC
20 ¶ 26. On October 20, 2008, plaintiff appealed his expulsion from defendant AAFS to the entire
21 membership of the Academy. FAC ¶ 28. Plaintiff repeatedly insisted that color copies of his exhibits
22 in support of the appeal be sent by mail to each voting member of the academy, but defendant chose to
23 post the materials on its website instead. FAC ¶ 28-32.

24 Defendant's annual meeting was held on February 18, 2009. FAC ¶ 34. Plaintiff alleges that
25 he and his counsel were only given 15 minutes to present their case, that he was denied fair procedure
26 during the hearing, and was not given formal notice of defendant's eventual decision to reject the appeal.
27 *Id.* At the annual meeting, the voting members of defendant voted to sustain the decision to expel. *Id.*
28

2

**LEGAL STANDARD**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008).

**DISCUSSION**

**I.   Form of Preliminary Injunction**

Defendant asks the Court to apply a strict standard to plaintiff's motion because the preliminary injunction requested by plaintiff is technically categorized as mandatory, rather than prohibitive. A mandatory injunction "orders an affirmative act or mandates a specified course of conduct." Black's Law Dictionary 349 (2d pocket ed. 2001). "Mandatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979) (quoting *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)). Plaintiff's motion for preliminary injunction asks the Court to stay enforcement of "defendant's September 16, 2008 order expelling plaintiff . . . from the membership of defendant AAFS pending trial in this matter." Plaintiff's Motion, Docket No. 19. Although issuing such an order would technically require an affirmative act on the part of defendant, it would arguably not upset the status quo between the two parties, because their relationship would simply be returned to its pre-conflict state for the duration of these proceedings. Therefore, the Court declines to apply the standard described in *Anderson*, which requires that plaintiff's motion "should not be issued unless the facts and law *clearly* favor the moving party." *Anderson*, 544 F.2d at 1233 (emphasis added).

**II.   Likelihood of Success on the Merits**

To determine the likelihood that plaintiff will succeed on the merits of his case, the Court must look to the underlying causes of action alleged in the complaint. Plaintiff alleges that defendant violated both his "common law right of a fair procedure" and his "first amendment right of free speech." FAC

3

¶ 122.

### A.     Common Law Right to Fair Procedure

California's common law right to fair procedure has arisen from the principle that "the right to practice a lawful trade or profession is sufficiently 'fundamental' to require substantial protection against arbitrary administrative interference, either by government or by a private entity." *Yari v. Producers Guild of Am., Inc.*, 73 Cal. Rptr. 3d 803, 805 (Cal. Ct. App. 2008) (citing *Ezekial v. Winkley*, 572 P.2d 32, 37 (Cal. 1977)). "The purpose of the common law right to fair procedure is to protect, in certain situations, against arbitrary decisions by private organizations . . . [T]his means that, when the right to fair procedure applies, the decisionmaking 'must be both substantively rational and procedurally fair.'" *Potvin v. Metro. Life Ins. Co.*, 997 P.2d 1153, 1156-1157 (Cal. 2000) (citation omitted).

#### (1)     Is Defendant AAFS a "Gatekeeper" Organization?

Defendant AAFS argues that the common law right to fair procedure does not apply, because it is not a "gatekeeper" organization. A "gatekeeper," according to the defense, is a private organization that "can effectively deprive an individual of the ability to practice a trade or profession." *Yari*, 73 Cal. Rptr. 3d at 805 (citing *Ezekial*, 572 P.2d at 37). In *Yari*, plaintiff brought suit against the Producers Guild of America and the Academy of Motion Picture Arts and Sciences for violation of the common law right of fair procedure after the Producers Guild determined he was not a "producer" of a film for purposes of an Academy Award nomination. *Yari*, 73 Cal. Rptr. 3d at 805. The court held that defendants were not "gatekeepers" for the plaintiff's position, despite allegations by plaintiff "that the Guild holds a 'virtual monopoly in the specialized field of motion picture producing' and 'represents itself as the de facto spokesperson for that profession,'" because the defendants did not control the plaintiff's ability to practice his trade. *Id.* at 807. Defendant AAFS argues that the "situation at issue in this case is substantially similar to *Yari*" because "AAFS has no impact on [p]laintiff's ability to work in the field of forensics." Defendant's Opposition, Docket No. 25 at 7.

Plaintiff counters that his claim under the common law right to fair procedure does not require him to prove that defendant "completely [prevented] him from working in his profession." Plaintiff's

4

Reply, Docket No. 34 at 4. Instead, plaintiff argues that protection extends to "exclusion from membership in defendant associations [that] deprives [plaintiff] of substantial economic advantages." *Pinsker v. Pac. Coast Soc. of Orthodontists*, 460 P.2d 495, 498 (Cal. 1969). The plaintiff in *Pinsker* asked the court to grant injunctive relief against the American Association of Orthodontists (AAO), who had denied him membership despite the fact that he had completed all prerequisites. *Id.* at 625. The court reversed the trial court's denial of injunctive relief based on the finding that membership in AAO "would appear to be a practical necessity for a dentist who wishes not only to make a good living as an orthodontist, but also to realize maximum potential achievement and recognition in such specialty." *Id.* at 627.

The Court agrees that "the common law protection against arbitrary expulsion . . . has been extended . . . to . . . professional and trade organizations." *Ezekial*, 572 P.2d at 36. "The underlying theme . . . is that membership in an association, with its associated privileges, once attained, is a valuable interest which cannot be arbitrarily withdrawn." *Id.* Defendant argues that there are multiple professional organizations in the field of forensic science, and that exclusion from AAFS does not completely preclude plaintiff from practicing his profession. These assertions are clearly meant to imply that membership in AAFS is not important enough to warrant a right to fair procedure. The defendant's own website, however, describes defendant as "the world's most prestigious forensic science organization." Plaintiff's Exhibit, Docket No. 20. Furthermore, defendant "represents its membership to the public and serves as the focal point for public organization concerning the forensic science profession." *Id.* Membership in the "most prestigious" professional association seems to be "a valuable interest that cannot be withdrawn." *Ezekial*, 142 Cal. Rptr. at 422.

The Court declines to decide this motion on the basis of the "gatekeeper" status of defendant AAFS. The relative importance of membership in AAFS to a forensic examiner is an issue that is hotly disputed by the parties, and the Court prefers to revisit the argument at a later time with the aid of the record developed at trial.

**(2)    Fair Procedure**

The Court must now consider whether plaintiff is likely to prevail on his claim that he was

5

1 denied fair procedure. In *Pinsker II*, the Supreme Court of California noted that the common law right
2 to fair procedure does not require "formal proceedings with all the embellishments of a court trial."
3 *Pinsker v. Pac. Coast Soc. of Orthodontists*, 526 P.2d 253, 264 (Cal. 1974). Instead, the institution only
4 needs to "[provide] an [adversely affected individual] . . . adequate notice of the 'charges' against him
5 and a reasonable opportunity to respond," as well as a "fair opportunity for an applicant to present his
6 position." *Id.* Therefore, there is no bright line rule upon which this Court should base its inquiry, other
7 than that the procedure utilized by defendant needed to provide plaintiff with adequate notice and a
8 reasonable opportunity to respond.

### (a) Notice

Plaintiff describes several aspects of the expulsion proceeding that he believes violated his common law right to fair procedure. First, plaintiff alleges that defendant did not provide notice of the "misrepresentation of data" charges with sufficient specificity, thus depriving plaintiff of adequate opportunity to prepare a response. Plaintiff's Motion at 10. After examining the notice that defendant sent to plaintiff, however, the Court does not agree that more specificity was required. The notice points to specific provisions of the AAFS Code of Ethics and Conduct that were violated, identifies the problematic theories utilized by plaintiff as "the determination of line sequencing," and expresses concerns over the apparent lack of "proof in the literature or any basis for [plaintiff's] determination of the sequence of writing ink and inkjet ink based on the examinations [plaintiff] conducted." Exhibit 3, Docket No. 26 at 13. The Court finds that based on the information before it at this time, plaintiff is unlikely to succeed in showing that he did not receive "adequate notice of the 'charges' against him." *Pinsker*, 526 P.2d at 264.

### (b) Cross-Examination of Complainant Moore

The next allegation by plaintiff is that he was denied the right to cross-examine his accuser, complainant Moore. Neither party disputes the fact that Moore was not present at the hearing, and was therefore unavailable for questioning. Also undisputed is the fact that the AAFS bylaws in place in 2006 stated that the Ethics Committee "shall give both the accused and the accuser(s) a reasonable

6

opportunity to be heard and to confront each other." Defendant's Opposition at 12. Defendant contends that it had absolutely no power to compel the appearance of Moore, and therefore should not be held responsible for his failure to attend the hearing. The Court is not particularly sympathetic to this line of reasoning, however, since it was defendant's own bylaws that created plaintiff's expectation of the opportunity to confront his accuser. Although plaintiff goes too far in comparing his situation to cases involving the constitutional right of confrontation, the Court finds that the conflict with defendant's own bylaws weighs in favor of a finding that the procedure utilized was not fair.

### (c) Voir Dire

The third aspect of defendant's expulsion procedure challenged by plaintiff was the lack of opportunity to *voir dire* the Ethics Committee to ensure lack of bias. Plaintiff's Motion at 12. The basis for this claim is that one of the committee members, William Riordan, was a forensic document examiner and therefore "may reasonably be expected to have had his own preconceived beliefs and opinions about the issues in dispute." *Id.* Plaintiff asserts that he was entitled to a completely neutral fact-finder, and that the presence of an expert on the committee therefore violated his right to fair procedure. *Id.* at 13. The only case that plaintiff offers in support of this contention is *Rosenblit v. Superior Court*, 282 Cal. Rptr. 819 (Cal. Ct. App. 1991), where a physician sought reinstatement of his medical staff membership and clinical privileges. The *Rosenblit* court ruled that the plaintiff physician "must be afforded the opportunity to conduct a liberal and probing oral examination of the committee members which is calculated to discover possible bias or conflicts of interest." *Id.* at 827.

Defendant distinguishes *Rosenblit* on the basis that the reviewing committee in that case had a clear conflict of interest, as demonstrated by the fact that two of the committee members had served as treating physicians on one of the cases under investigation. Defendant's Opposition at 15. In addition, defendant argues that the committee members in *Rosenblit* had a personal stake in that hearing, whereas defendant's Ethics Committee members had no such personal stake. *Id.* Defendant also notes that its bylaws require committee members to recuse themselves if they have a conflict or bias towards the accused, and that plaintiff was therefore not denied the opportunity to be heard in front of a neutral panel. *Id.* The Court agrees that plaintiff is unlikely to succeed in showing that defendant AAFS's

Ethics Committee was biased against plaintiff. Simply not having the right to *voir dire* the committee is unlikely to weigh significantly in favor of finding a violation of the common law right to fair procedure. *Winter*, 129 S. Ct. at 374.

### (d)     Witness Gerald Richards

Plaintiff's allegations regarding Gerald Richards are that he was allowed to view the hearing prior to giving his own testimony, and that plaintiff was not allowed to question him about his possible friendships with members of the committee. These two claims suggest a lack of fairness, because cross-examination of Richards would have given plaintiff an opportunity to reveal the presence of bias, and excluding Richards from the hearing would have eliminated any suggestion that he had been tainted as a witness. The Court finds that both of these issues weigh in favor of the proposition that defendant denied plaintiff a "reasonable opportunity to respond." *Id.*

### (e)     Witness Gerry LaPorte

Plaintiff was also allegedly denied fair procedure because he was not allowed to fully cross-examine witness Gerry LaPorte (a member of the United States Secret Service only permitted by the government to give limited testimony). Defendant simply could not be expected to force a Secret Service agent to testify about matters that his employer, the United States government, had prohibited. Therefore, this factor does not weigh in favor of plaintiff.

### (f)     Limiting Voting to Members That Had Read Appeal

Plaintiff next contends that AAFS members voting on the expulsion should have been limited to those who had actually read plaintiff's appeal. Plaintiff's Motion at 13-17. Plaintiff points to no provision in the AAFS Bylaws which includes such a requirement, implementation of which would presumably require defendant to question all voting members of the organization and then ascertain whether they were telling the truth, all before holding the vote. The Court does not anticipate that the common law right to fair procedure will be found to require such a burdensome measure.

### (g) Mailings

The undisputed fact that defendant did not mail color copies of plaintiff's exhibit to every one of its members does not demonstrate that the hearing procedure was unfair. Defendant's bylaws did indicate that a notice of appeal should be "mailed" to each voting member of the academy. Plaintiff's Motion at 16. However, plaintiff "submitted [to defendant] a 36-page written statement and 38 exhibits, which totaled 325 pages." Defendant's Opposition at 17-18. Defendant decided that it would be more practical to post the materials on the website, rather than mail 325-page color documents to its 2,850 voting members. *Id.* The Court does not believe that this method of document delivery implies a lack of fair procedure.

### (h) Code of Ethics and Bylaws

Plaintiff's final contention is that in violation of defendant's Code of Ethics and Bylaws, he was not mailed the full version of the Ethics Committee's report until after the expulsion decision had already been made in October 2008. Article II, section 5h of the bylaws "provides that a member found to be in violation of the Code of Ethics and Conduct may submit a written statement for review by the Board of Directors prior to the Board's vote to either censure, suspend, or expel the member." Plaintiff's Motion at 16. Both parties agree that defendant mailed plaintiff a notification letter on June 13, 2008 that reported the committee's conclusions. *Id.* Defendant does not claim that plaintiff was sent the full committee report, just that he was sent the decision letter and was informed that he could file a written response recommending possible sanctions. Defendant's Opposition at 17. Plaintiff's argument is that because he was not provided a full report, the written statement mentioned in Article II, section 5h of the bylaws could not have been meaningful. Plaintiff's Motion at 16. The Court agrees that plaintiff probably could have submitted a more effective response earlier had he been mailed the full report immediately. However, plaintiff did receive the full report in October of 2008, and had until February of the next year to prepare his appeal of the decision. Fair procedure only requires that plaintiff have been give "reasonable opportunity to respond." *Pinsker*, 526 P.2d at 264. Under these facts, the timing of defendant's mailing does not strongly weigh in plaintiff's favor.

9

### (i) Summary

Although plaintiff does raise some legitimate questions about the fairness of defendant's expulsion procedure, the Court does not believe that he has demonstrated that it is "likely" that he will succeed on the merits. *Winter*, 129 S. Ct. at 374. At the very most, success on the merits appears to be "possible" based on the documentation in front of the Court at this time.

### B. First Amendment[1]

Plaintiff's second cause of action alleges that defendant violated his First Amendment rights to free speech and opinion. FAC ¶¶ 112-116. "[T]he guarantees of free speech and equal protection guard only against encroachment by the government and "erect no shield against merely private conduct." *Hurley v. Irish-American Gay, Lesbian, & Bisexual Grp. of Boston*, 515 U.S. 557, 566 (1995) (*citing Shelley v. Kraemer*, 334 U.S. 1, 13 (1948)). Plaintiff cites numerous cases that purportedly show the willingness of courts to step into private disputes to protect First Amendment rights. Plaintiff's Motion at 18 (*citing Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485 (1984); *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964); *Curtis Publishing Co. v. Butts*, 388 U.S. 130 (1967)). These cases, however, only extend First Amendment protection as a defense to liability in disputes among private parties over defamation, libel or similar claims. Plaintiff does not suggest any legitimate basis for a First Amendment claim against defendant in this case. Therefore, the First Amendment claim is certainly not "likely to succeed on the merits," and does not help plaintiff in his motion for a preliminary injunction. *Winter*, 129 S. Ct. at 374.

### CONCLUSION

Although plaintiff has raised the possibility that his common law right to fair procedure was violated by defendant, the Court does not believe that plaintiff has made a strong enough showing at this

---

[1] Defendant states that "[p]laintiff amended his original complaint *to eliminate a cause of action based on the First Amendment* following a meet and confer with counsel for AAFS." Defendant's Opposition, Docket No. 25 at 20. The FAC in possession of the Court, however, still contains the First Amendment cause of action.

time to warrant a preliminary injunction. To minimize any damage that plaintiff may experience as a result of not receiving the injunction, the Court offered to expedite the timeline for trial, but plaintiff declined. For the foregoing reasons and for good cause shown, the Court hereby DENIES plaintiff's motion for a preliminary injunction. (Docket No. 19).

**IT IS SO ORDERED.**

Dated: February 17, 2010

SUSAN ILLSTON
United States District Judge